**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:24-CV-24066-CMA

ALAN GUERECA, *individually and*
*on behalf of all others similarly situated*,

     Plaintiff,

v.

MOTORSPORT.TV DIGITAL, LLC,

     Defendant.
_____

## DEFENDANT MOTORSPORT.TV DIGITAL, LLC'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION TO STRIKE CLASS ALLEGATIONS AND INCORPORATED MEMORANDUM OF LAW

**RYAN D. SCHOEB, ESQ.**
Florida Bar No. 109257
**KYLE W. WOODFORD, ESQ.**
Florida Bar No. 1033490
**WOOD, SMITH, HENNING & BERMAN LLP**
1501 S. Church Avenue, Suite 200
Tampa, Florida 33629
rschoeb@wshblaw.com
kwoodford@wshblaw.com
tmarshall@wshblaw.com

*Counsel for Motorsport.TV Digital, LLC*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF FACTS ......................................................................................1

III.    PLAINTIFF'S VPPA CLAIM IS LEGALLY DEFICIENT BECAUSE HE FAILS TO PLEAD FACTUAL ALLEGATIONS THAT MOTORSPORT IMPLEMENTED  THE META PIXEL ON THE WEBSITE OR THAT INFORMATION  REGARDING HIS INTERACTION WITH THE WEBSITE WAS TRANSMITTED  TO META...............................................................................3

IV.    EVEN ASSUMING THE TRUTH OF PLAINTIFF'S CONCLUSORY ALLEGATIONS, HIS VPPA CLAIM MUST STILL BE DISMISSED BECAUSE A FACEBOOK ID IS NOT A PERSONAL IDENTIFIER AND HE FAILS TO ALLEGE THAT  HIS META PROFILE CONTAINED PERSONAL INFORMATION.....................................................................................................4

V.     PLAINTIFF'S VPPA CLAIM IS LEGALLY DEFICIENT BECAUSE PLAINTIFF PROVIDED STATUTORY CONSENT TO THE ALLEGED CONDUCT ...............................................................................................................7

        A.      This Court has continuously enforced clickwrap agreements. ................................7

        B.      By entering into the Clickwrap Agreement, Plaintiff provided statutory consent under the VPPA for the alleged conduct giving rise to his claim..............8

               1.      The first prong is satisfied because Plaintiff entered into the Clickwrap Agreement with Motorsport and therefore consented to the Privacy Policy. ......................................................................................9

               2.      The second prong is satisfied because Plaintiff never withdrew consent and it did not lapse by operation of law......................................10

               3.      The third prong is satisfied because the Privacy Policy provided Plaintiff instructions in a clear and conspicuous manner on how to withdraw Consent. ......................................................................................11

VI.    THIS COURT SHOULD ALTERNATIVELY STRIKE PLAINTIFF'S CLASS ALLEGATIONS BECAUSE THIS COURT HAS RECENTLY HELD THAT A CLASS CANNOT BE CERTIFIED IN THE CONTEXT OF VPPA LITIGATION...........................................................................................................13

VII.   CONCLUSION.....................................................................................................16

## TABLE OF AUTHORITIES

**Case**                                                                                                    **Page(s)**

*American Choice Healthcare, LLC v. Coverys Specialty Insurance Company*,
No. 24-22324-CIV, 2024 WL 5165877 (S.D. Fla. Dec. 19, 2024)........................................3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................................3,4

*Barnes & Noble Booksellers, Inc.*,
No. 17CV04570LAKKHP, 2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017) ..........................9

*Collins v. Erin Cap. Mgmt., LLC*,
290 F.R.D. 689 (S.D. Fla. 2013).......................................................................................14

*Cordoba v. DIRECTV, LLC*,
942 F.3d 1259 (11th Cir. 2019) .........................................................................................14

*Edwards v. Learfield Commc'ns, LLC*,
697 F. Supp. 3d 1297 (N.D. Fla. 2023).............................................................................5,6,7

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)...............................................................................................5,6,

*Hepburn-Belizaire v. Iowa Coll. Acquisition Corp.*,
No. 09-61532-CIV, 2009 WL 10699576 (S.D. Fla. Nov. 9, 2009) ....................................4

*Heerde v. Learfield Commc'ns, LLC*,
No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874 (C.D. Cal. July 19, 2024)............5,6

*In re Hulu Priv. Litig.*,
No. C 11-03764 LB, 2014 WL 2758598 (N.D. Cal. June 17, 2014) ..................................15,16

*Kamm v. California City Dev. Co.*,
509 F.2d 205 (9th Cir. 1975) ............................................................................................14

*Kravets v. Anthropologie, Inc.*,
No. 22-CV-60443, 2022 WL 1978712 (S.D. Fla. June 6, 2022) .........................................13

*Larry Pearl v. Coinbase Global, Inc.*,
No. 22-CV-03561-MMC, 2024 WL 3416505 (N.D. Cal. July 15, 2024) ...........................14

*Martinez v. D2C, LLC*,
No. 23-21394-CIV, 2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) .........................................14

*Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.,*
481 F. Supp. 3d 1258 (S.D. Fla. 2020),
*aff'd,* No. 20-13588, 2021 WL 4427772 (11th Cir. Sept. 27, 2021) .....................................14

*Scanz Techs., Inc. v. JewMon Enterprises, LLC*,
No. 20-22957-CIV, 2021 WL 65466 (S.D. Fla. Jan. 7, 2021)................................................5

*Segal v. Amazon.com, Inc.*,
763 F. Supp. 2d 1367 (S.D. Fla. 2011) ...............................................................................8

*Simmons v. Ford Motor Co.*,
592 F. Supp. 3d 1262 (S.D. Fla. 2022) ..............................................................................14

*Smith v. Trinity Broad. of Texas, Inc.*,
No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557 (C.D. Cal. Sept. 27, 2024).................6,7

*Solomon v. Flipps Media, Inc.*,
No. 22-CV-5508-JMA-JMW, 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023).....................7

*United States v. Diaz,*
No. 03-20895-CR, 2004 WL 5589592, at *5 (S.D. Fla. May 3, 2004),
*report and recommendation adopted,*
No. 03-20895-CR, 2004 WL 5589590 (S.D. Fla. May 24, 2004) ........................................11

*Valiente v. StockX, Inc.,*
645 F. Supp. 3d 1331 (S.D. Fla. 2022) .............................................................................7,8

*Wilson v. Triller, Inc.*,
598 F. Supp. 3d 82 (S.D.N.Y. 2022).................................................................................6,7

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Circuit 2016)...........................................................................................6

*Yolanda Lopez v. City of Opa-Locka,*
No. 24-22076-CIV, 2024 WL 4930610 (S.D. Fla. Dec. 2, 2024).........................................3

**Other Authority**

H.R. Rep. 112-312 (2011).....................................................................................................9

**Rules**

Fed. R. Civ. Pro. Fed. R. Civ. P. 12(b)(1)..............................................................*passim*

Fed. R. Civ. Pro. Fed. R. Civ. P. 12(b)(6).............................................................*passim*

Fed. R. Civ. Pro. Fed. R. Civ. P. 23(b)(2)..................................................................................16

Fed. R. Civ. Pro. Fed. R. Civ. P. 23(b)(3)..................................................................................16

Fed. R. Civ. Pro. Fed. R. Civ. P. 23(c)(1)..............................................................................*passim*

Fed. R. Civ. Pro. Fed. R. Civ. P. 23(d)(1)(D).........................................................................*passim*

**Statutes**

18 U.S.C. § 2710, *et seq*.....................................................................................................*passim*

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.     INTRODUCTION

Alan Guereca ("Plaintiff") brings a putative class action complaint against Motorsport.TV Digital, LLC ("Motorsport"), alleging that it installed the Meta Pixel on its website[1] (the Website"), which in turn collected and transmitted his viewing activities to Meta in violation of the Video Privacy Protection Act (18 U.S.C. § 2710, *et seq.*) ("VPPA") (the "Complaint"). However, as explained below, the Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because (i) Plaintiff fails to plead factual allegations that Motorsport implemented the Meta Pixel on the Website or transmitted information to Meta; and (ii) Plaintiff provided Motorsport statutory consent under the VPPA to the alleged conduct giving rise to his claim. Alternatively, should this Court not dismiss the Complaint, the class allegations must be stricken pursuant to Fed. R. Civ. P. 12(f), 23(c)(1), and/or 23(d)(1)(D) as this Court recently held that a class cannot be certified in the context VPPA litigation.

### II.     STATEMENT OF FACTS

Motorsport provides its users with access to content streamed via its Website (the "Content").  *See* Declaration of Rainier Ehrhardt, ¶ 4. Motorsport's terms of service ("TOS") govern a user's interaction with the Website and Content. *Id.* ¶ 5. Motorsport's privacy policy ("Privacy Policy") governs the method by which Motorsport collects, uses, and shares information regarding a user's interaction with the Website and Content. *Id.* ¶ 6.

Plaintiff alleges that he "viewed on-demand videos on Defendant's website after purchasing a subscription in June 2023[.]"*See* Complaint, ¶ 9. To purchase a subscription on the

---

[1] motosport.tv

Website, a Motorsport user, including Plaintiff, must first complete the registration process on the Motorsport Userflow (defined below). *See* Declaration of Rainier Ehrhardt, ¶ 8. A user, including Plaintiff, cannot advance to the next step and complete the Motorsport account registration process until the user affirmatively clicks the button titled "Continue" within the Motorsport Userflow, which is displayed immediately next to the message that expressly states that "By clicking Continue, you agree to the Terms of Service and Privacy Policy." (the "Clickwrap Agreement"). *Id*. ¶ 13. At the time Plaintiff allegedly "purchas[ed] a subscription in June 2023", the Motorsport Userflow was substantially the same as the true and correct screenshot depicted below:



*Id*. ¶ 12, Exhibit C. As shown in the above screenshot, the words "Terms of service" and "Privacy Policy" are active hyperlinks that a Motorsport user, including Plaintiff, could click on to be

directed to another screen containing the entire text of the respective document. *Id.* ¶¶ 14-15. When Plaintiff allegedly "purchas[ed] a subscription in June 2023", he encountered and had the opportunity to review the TOS and Privacy Policy on the Motorsport Userflow prior to creating a Motorsport account and purchasing a subscription, as illustrated above. *Id.* ¶ 19. Accordingly, by the process described above, Plaintiff provided consent for Motorsport to collect, process, store, share, and/or sell information regarding his interaction with the Website and Content (the "Consent"). Furthermore, at no time relevant hereto did Plaintiff withdraw Consent. *Id.* ¶ 23.

III.   **PLAINTIFF'S VPPA CLAIM IS LEGALLY DEFICIENT BECAUSE HE FAILS TO PLEAD FACTUAL ALLEGATIONS THAT MOTORSPORT IMPLEMENTED THE META PIXEL ON THE WEBSITE OR THAT INFORMATION REGARDING HIS INTERACTION WITH THE WEBSITE WAS TRANSMITTED TO META.**

As your Honor has held:

> To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading withstands a motion to dismiss if it alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

*American Choice Healthcare, LLC v. Coverys Specialty Insurance Company*, No. 24-22324-CIV, 2024 WL 5165877, at *2 (S.D. Fla. Dec. 19, 2024) (cleaned up). Your Honor has also held that pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Yolanda Lopez v. City of Opa-Locka*, No. 24-22076-CIV, 2024 WL 4930610, at *2 (S.D. Fla. Dec. 2, 2024). Additionally, Your Honor as held that pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual

allegations." *Hepburn-Belizaire v. Iowa Coll. Acquisition Corp.,* No. 09-61532-CIV, 2009 WL 10699576, at *2 (S.D. Fla. Nov. 9, 2009).

Here, Plaintiff alleges in a conclusory manner that "over the past two years, Defendant has systematically transmitted (and continues to transmit today) its customers' personally identifying subscription and video viewing information to Meta using a snippet of programming code called the 'Meta Pixel,' which Defendant chose to install on its website." *See* Complaint, ¶ 2. However, Plaintiff fails to satisfy the pleading standards identified by Your Honor because he fails to provide factual allegations to support his conclusory allegation. *See Id.*, *generally*. Indeed, Plaintiff fails to support his allegations that Motorsport implemented the Meta Pixel on the Website or that information regarding his interaction with the Website and Content was transmitted to Meta. *See Id.* Plaintiff also fails to allege the name of the video that was allegedly transmitted to Meta, the type of device and web browser he used to interact with the Website and Content, when the alleged conduct occurred and how he discovered it. *See Id.* Accordingly, Plaintiff's Complaint must be dismissed because it contains "unadorned, the-defendant-unlawfully-harmed-me accusation[s]."

## IV.   EVEN ASSUMING THE TRUTH OF PLAINTIFF'S CONCLUSORY ALLEGATIONS, HIS VPPA CLAIM MUST STILL BE DISMISSED BECAUSE A FACEBOOK ID IS NOT A PERSONAL IDENTIFIER AND HE FAILS TO ALLEGE THAT HIS META PROFILE CONTAINED PERSONAL INFORMATION .

The VPPA only prohibits a video service provider from disclosing a consumer's "personally identifiable information", which is defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Here, Plaintiff alleges that a Facebook ID ("FID") is personally identifiable information because it is "a unique sequence of numbers linked to the Meta profile belonging to that consumer." *See* Complaint, ¶ 3. However, Plaintiff's allegations are unfounded.

First, as explained above, Plaintiff fails to provide factual allegations that Motorsport implemented the Meta Pixel on the Website, or that *his FID* was transmitted to Meta. *See Id., generally*. Second, Plaintiff's allegation is refuted by Meta itself, which has stated a "User ID is a string of numbers that doesn't personally identify you[.]" *See How usernames and user IDs are used on Facebook profiles, Facebook*.[2] The Third Circuit reaffirmed Meta's description of a FID, which in analyzing the VPPA held that "static digital identifiers that could, in theory, be combined with other information to identify a person **do not count as 'personally identifiable information'…**at least by themselves [emphasis added]." *In re Nickelodeon Consumer Priv. Litig.,* 827 F.3d 262, 283 (3d Cir. 2016). District Courts sitting in the Eleventh Circuit continuously rely on the Third Circuit's decision in *In re Nickelodeon Consumer Priv. Litig.* in dismissing VPPA claims. For instance, in *Edwards v. Learfield Commc'ns, LLC,* the Northern District of Florida dismissed plaintiffs' VPPA claim because they had "not alleged any disclosure of personally identifiable information." *Id.* 697 F. Supp. 3d 1297, 1307 (N.D. Fla. 2023). Specifically, the Northern District of Florida held that:

> [U]nder any reasonable interpretation of the statute, Plaintiffs have not alleged enough. At best, they plausibly allege that *sometimes* Facebook can use a UID[3] to identify a particular person. They do not allege that Facebook ever used, or even can use, *their* UIDs to identify *them* or *their* video-watching habits. The complaint does not even allege that each Plaintiff was signed into his or her own Facebook account when visiting the Gators Website; it says only that each Plaintiff "us[ed] a device that was signed into Facebook." FAC ¶¶ 15-17.
>
> Even assuming Plaintiffs were signed into their own Facebook accounts, the complaint "contains no allegation as to what information was actually included on

---

[2] *See* https://www.facebook.com/help/150193685051184/. Pursuant to Federal Rule of Evidence 201(b), Motorsport requests this Court take judicial notice of this publicly-accessible Meta article. *See Scanz Techs., Inc. v. JewMon Enterprises, LLC*, No. 20-22957-CIV, 2021 WL 65466, at *5 (S.D. Fla. Jan. 7, 2021) ("is not uncommon for Courts to take judicial notice of factual information found on the world wide web."); *Heerde v. Learfield Commc'ns, LLC,* No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024) (taking judicial notice of a Meta article published online).

[3] The Court in *Edwards* defined "Facebook User ID" as "UID."

> [their] profile[s]," such as their names or birthdays. *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 92 (S.D.N.Y. 2022). It offers only threadbare recitals that Ms. Edwards's and Mr. Stonebaker's "profile[s] included personally identifiable information." FAC ¶¶ 15, 17 (The complaint omits even any threadbare recital as to Mr. Edwards, *id.* ¶ 16.). That "formulaic recitation of the element[ ]" is not enough. *Iqbal*, 556 U.S. at 681, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

*Id*. The Northern District of Florida further held that:

> Perhaps more significantly, the complaint does not allege facts plausibly showing that the Gators Website's pixel "readily permit[s] *an ordinary person* to identify" Plaintiffs' video-watching behavior, *In re Nickelodeon*, 827 F.3d at 267 (emphasis added), or how Facebook can do that without "unforeseeable detective work," *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Circuit 2016). Although Plaintiffs do allege that the Gators Website transmits metadata, which contains c_user IDs and "may" contain video titles, FAC ¶¶ 82-92, they offer no facts explaining how Facebook accesses that metadata, why doing so does not require technical expertise, or how much metadata Facebook has to comb through to discover someone's c_user ID and the video titles. The complaint only alleges in conclusory fashion that "[o]nce the Pixel's routine exchange of information is complete, the UID that becomes available can be used by any individual of ordinary skill and technical proficiency to easily identify a Facebook user." *Id.* ¶ 79.

*Id.* 1307–08 (N.D. Fla. 2023); *see also Heerde*, 2024 WL 3573874, at *4 ("private profiles may not be viewable even if someone has the FID") (dismissing VPPA claim for "fail[ure] to allege their PII was disclosed because they do not identify what information on their Facebook pages, if any, was viewable and could be used to identify them."); *Smith v. Trinity Broad. of Texas, Inc.,* No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557, at *3 (C.D. Cal. Sept. 27, 2024) (dismissing VPPA claim because "Smith fails to allege that her FID provides sufficient identifying information. To claim that her FID permits Meta to identify Smith, she must establish that (1) her Facebook profile is publicly accessible and (2) includes sufficient identifying information…However, Smith does not indicate that her profile is public and contains any identifying information or photos. Rather than allege what is on her personal Facebook profile, Smith merely states that the FID is PII because leads others to her personal profile.").

Here, Plaintiff merely alleges that he "had a Meta account, a Meta profile, and an FID associated with such profile. " *See* Complaint, ¶ 11. However, as explained above, Plaintiff fails to plead factual allegations that that *his FID* was transmitted to Meta. *See Id., generally*. Furthermore, during the time of the alleged conduct, Plaintiff fails to allege the privacy setting of his Meta profile (including whether it was set to public or private), and the type of information he voluntarily made available on his Meta profile. *Id*. Accordingly, Plaintiff's Complaint must be dismissed.

V.   **PLAINTIFF'S VPPA CLAIM IS LEGALLY DEFICIENT BECAUSE PLAINTIFF PROVIDED STATUTORY CONSENT TO THE ALLEGED CONDUCT.**

A.   **This Court has continuously enforced clickwrap agreements.**

"Florida courts have recognized…clickwrap agreements…when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions". *Valiente v. StockX, Inc.,* 645 F. Supp. 3d 1331, 1337 (S.D. Fla. 2022); *see also Segal v. Amazon.com, Inc.,* 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) ("In Florida and the federal circuits … clickwrap agreements are valid and enforceable contracts."). Here, Plaintiff alleges that he "never consented, agreed, authorized, or otherwise permitted Defendant to disclose subscription or Personal Viewing Information to Meta. In fact, Defendant has never even provided Plaintiff Guereca with written notice of its practices of disclosing its customers' subscription and Personal Viewing Information to third parties such as Meta." *See* Complaint, ¶ 12. However, this is *simply untrue*. Indeed, similar to the plaintiffs in *Valiente* and *Segal*, via the process explained above, Plaintiff entered into an enforceable Clickwrap Agreement and manually and affirmatively checked a box confirming that he agreed to the TOS and Privacy Policy, which describes the ability for Motorsport to collect, process, store,

share, and/or sell information regarding his interaction with the Website and Content. Furthermore, as this Court has held, any "failure to read an enforceable clickwrap agreement, as with any binding contract, will not excuse compliance with its terms". *Valiente,* 645 F. Supp. 3d 1331, 1337. Accordingly, as described below, by entering into the Clickwrap Agreement, Motorsport received statutory consent under the VPPA for the alleged conduct giving rise to Plaintiff's claim. As such, Plaintiff's Complaint must be dismissed.

**B.      By entering into the Clickwrap agreement, Plaintiff provided statutory Consent under the VPPA for the alleged conduct giving rise to his claim.**

Pursuant to the VPPA, a video tape service provider may disclose personally identifiable information concerning any consumer to any person with the informed, written consent (including through an electronic means using the internet)[4] of the consumer that (i) is in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; (ii) at the election of the consumer is given at the time the disclosure is sought or is given in advance for a set period of time, not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner; and (iii) the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election. *See* 18 U.S.C. § 2710(b)(2)(B). As discussed below, the Clickwrap Agreement satisfies each requirement under the VPPA for permissible disclosure. Accordingly, Plaintiff's Complaint must be dismissed.

---

[4] The statute was amended in 2011 to "clarify that a video tape service provider may be obtained through the Internet." H.R. Rep. 112-312 (2011). At the time the amendment passed, Congress was aware that internet companies like Facebook "track, retain, market and mine information on their customers," and the legislative history makes clear that the amendment was intended "to provide a seamless process to share video viewing habits on social media (like Facebook) in the same manner currently in use for music, books and news articles." *Id.*; *see also Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17CV04570LAKKHP, 2017 WL 3727230, at *8 (S.D.N.Y. Aug. 11, 2017).

1.  <u>The first prong is satisfied because Plaintiff entered into the Clickwrap Agreement with Motorsport and therefore Consented to the Privacy Policy.</u>

The first requirement for permissible disclosure under VPPA is satisfied because Plaintiff Consented to Motorsport's Privacy Policy, which speaks for itself and is in a form that is separate and unique from all other forms setting forth other legal or financial obligations of the Plaintiff. *See* Declaration of Rainier Ehrhardt, ¶ 6. Exhibit B.  Indeed, as illustrated below, at all times since Plaintiff allegedly "purchas[ed] a subscription in June 2023", the opening paragraph of the Privacy Policy explicitly explained that its sole purpose was to describe Motorsport's ability to collect, use, and share information regarding a user's interaction with the Website and Content:

## PRIVACY POLICY - MOTORSPORT.TV

*Effective January 31, 2017*

**PLEASE READ THIS PRIVACY POLICY (THIS "PRIVACY POLICY") CAREFULLY BEFORE USING OUR WEBSITE, APPLICATIONS OR ANY OTHER MOTORSPORT.TV DIGITAL, LLC PRODUCT OR SERVICE.**

Motorsport.tv Digital, LLC produces and publishes the Motorsport.tv Website (this "Website"), downloadable mobile applications available from third party application storefronts ("Application(s)"). This Privacy Policy is applicable to this Website and the Application, both of which will be called "Services" throughout this Privacy Policy, and describes what information we collect, how we may use that information and the choices we offer for you to manage the information we collect related to your use of our Services.

*See Id*. Additionally, as illustrated below, at all times since Plaintiff allegedly "purchas[ed] a subscription in June 2023", the Privacy Policy explicitly explained Motorsport's ability to implement cookies and web beacons (such as the Meta Pixel) on its Website to collect, use, and share information regarding a user's interaction with the Website and Content:

**5. Other Information Collected And Shared Within Our Services**

- *Our Cookies and Web Beacons*

We use and permit automatic methods such as cookies (small amounts of data which include a unique string of characters sent to your browser or application from a website's computers and stored on your computer's or device's hard drive), web beacons (technology used to track activity, also known as pixel tags) or similar technologies, alone or in combination with personally identifiable information you choose to provide us. Examples of the information we collect and analyze using such methods include, but is not limited to: personal information as authorized by you, the Internet protocol address used to connect your computer or device to the Internet; email address; login name and password; operating system type, version and computer or device platform; purchase history; the full Uniform Resource Locator clickstream to, on and from our Services, including date and time; and products you viewed or searched. We use software tools to measure and collect session information, including page response times, download errors, length of visits to certain pages, page interaction information (such as scrolling, clicks and mouse-overs) and methods used to browse away from a page. We use and may allow certain third parties, such as those who provide services associated with our Services, to access these automatic data collection methods to enable you to use a "shopping cart" while using our Services, to store your preferences and to improve, deliver and customize our Services' content and offerings.

- *Third Party Cookies and Web Beacons; Network Advertisers*

We allow select third parties, such as those who deliver advertisements, content, social networking or provide other services associated with our Services, to set cookies, web beacons or similar technologies in certain locations within the Services or certain emails sent by us. Third party companies that manage and deliver advertisements to websites and applications such as ours are commonly referred to as "network advertisers." A permitted network advertiser may use cookies, web beacons or similar technologies to collect information about your interaction with our Services in order to tailor certain advertisements and content delivered within our Services and on other websites within such network advertiser's ad network. You may elect to opt out of targeted behavioral advertising from many major third party network advertisers by clicking here. If you would like to obtain more information about common industry practices of network advertisers or make choices about their use of your information or find additional opt-out tools operated by advertising industry associations encompassing even more network advertisers, please click here.

*See Id.*

Here, Plaintiff alleges that via the Meta Pixel, Motorsport disclosed to Meta (i) his FID; (ii) the specific title of the video he requested and obtained; (iii) the URL where he requested access to and obtained the video; and (iv) information concerning the device he used to request and obtain the video. *See* Complaint, ¶ 10. However, as clearly and unambiguously illustrated above, Motorsport's Privacy Policy explicitly put Plaintiff on notice of the alleged conduct giving rise to his claim. Accordingly, by entering into the Clickwrap Agreement and consenting to the Privacy Policy and the terms therein, Plaintiff provided Consent under 18 U.S.C. § 2710(b)(2)(B) to the alleged conduct. As such, Plaintiff's Complaint must be dismissed.

> 2. <u>The second prong is satisfied because Plaintiff never withdrew consent and it did not lapse by operation of law.</u>

The second requirement for permissible disclosure under VPPA is satisfied because Plaintiff's Consent did not lapse by operation of law under 18 U.S.C. § 2710(b)(2)(B)(i)(II). Indeed, Plaintiff allegedly "purchas[ed] a subscription in June 2023", and therefore his Consent was legally sufficient for two years, up and until June 2025.

The second requirement for permissible disclosure under VPPA is also satisfied because withdrawal of consent requires an "unequivocal act or statement [.]" *United States v. Diaz,* No. 03-20895-CR, 2004 WL 5589592, at *5 (S.D. Fla. May 3, 2004), *report and recommendation adopted,* No. 03-20895-CR, 2004 WL 5589590 (S.D. Fla. May 24, 2004). Here, Plaintiff never notified Motorsport that he withdrew Consent, requested to withdraw Consent, or opted-out of the Privacy Policy under 18 U.S.C. § 2710(b)(2)(B)(i)(II). *See* Declaration of Rainier Ehrhardt, ¶ 23. Rather, Plaintiff continuously reaffirmed his Consent by continuing to use and access the Website and Content. Indeed, at all times since Plaintiff allegedly "purchas[ed] a subscription in June 2023", the opening paragraph of the TOS explicitly explained that "by using and/or visiting this Website…you signify your agreement to these terms and conditions." *See Id.,* ¶ 5, Exhibit A. Accordingly, Plaintiff provided Consent under 18 U.S.C. § 2710(b)(2)(B) to the alleged conduct. As such, Plaintiff's Complaint must be dismissed.

3. <u>The third prong is satisfied because the Privacy Policy provided Plaintiff instructions in a clear and conspicuous manner on how to withdraw Consent.</u>

The Third requirement for permissible disclosure under VPPA is satisfied because as illustrated below, at all times since Plaintiff allegedly "purchas[ed] a subscription in June 2023", Section Five and Section Seven of Motorsport's Privacy Policy provided Plaintiff, in a clear and conspicuous manner, an opportunity under 18 U.S.C. § 2710(b)(2)(B)(iii) to withdraw from ongoing disclosures at Plaintiff's election:

**5. Other Information Collected And Shared Within Our Services**

- *Our Cookies and Web Beacons*

We use and permit automatic methods such as cookies (small amounts of data which include a unique string of characters sent to your browser or application from a website's computers and stored on your computer's or device's hard drive), web beacons (technology used to track activity, also known as pixel tags) or similar technologies, alone or in combination with personally identifiable information you choose to provide us. Examples of the information we collect and analyze using such methods include, but is not limited to: personal information as authorized by you, the Internet protocol address used to connect your computer or device to the Internet; email address; login name and password; operating system type, version and computer or device platform; purchase history; the full Uniform Resource Locator clickstream to, on and from our Services, including date and time; and products you viewed or searched. We use software tools to measure and collect session information, including page response times, download errors, length of visits to certain pages, page interaction information (such as scrolling, clicks and mouse-overs) and methods used to browse away from a page. We use and may allow certain third parties, such as those who provide services associated with our Services, to access these automatic data collection methods to enable you to use a "shopping cart" while using our Services, to store your preferences and to improve, deliver and customize our Services' content and offerings.

- *Third Party Cookies and Web Beacons; Network Advertisers*

We allow select third parties, such as those who deliver advertisements, content, social networking or provide other services associated with our Services, to set cookies, web beacons or similar technologies in certain locations within the Services or certain emails sent by us. Third party companies that manage and deliver advertisements to websites and applications such as ours are commonly referred to as "network advertisers." A permitted network advertiser may use cookies, web beacons or similar technologies to collect information about your interaction with our Services in order to tailor certain advertisements and content delivered within our Services and on other websites within such network advertiser's ad network. You may elect to opt out of targeted behavioral advertising from many major third party network advertisers by clicking here. If you would like to obtain more information about common industry practices of network advertisers or make choices about their use of your information or find additional opt-out tools operated by advertising industry associations encompassing even more network advertisers, please click here.

/ / /

/ / /

/ / /

/ / /

/ / /

**7. Managing Your Information**

You may choose and control what information you provide about yourself and certain information which is automatically collected via our Services. If you do not wish to provide certain information necessary for enhanced functionality or content on our Services, please do not use such functionality or content. If you have registered for an account through our Services, you may review and revise certain of your account information by clicking here to log in, and then navigating the left-hand menu options. You may modify your subscriptions to our various promotional email communications and newsletters by accessing the "Email Subscriptions" section within your Website account.

If you do not want information collected through the use of cookies, there is a simple procedure in most browsers that allows a user to accept or reject most cookies. Certain cookies that are set when some video products are accessed on our Website, called local shared objects or Flash cookies, may not be managed using the settings in your web browser. Information on managing, accepting and rejecting these cookies is available from Adobe via the Adobe website. If you set your browser or Adobe Flash options *not* to accept cookies or local shared objects, you may not be able to take advantage of certain Services.

If you want to review or revise the personal information you provided during registration or in connection with a purchase or other activity while using our Services, or change the promotional email communications or newsletters you receive from us, you may log in, and then click on the applicable left-hand menu option. If you want to close your Website account and have us delete the personal information in it (except for information that we keep for record-keeping purposes), you should call Motorsport.tv Digital, LLC directly at +1 305 877 30 97.

Remember that when you share information publicly online, it may be indexable by search engines or recorded by others, and any search engine index or record of your information may persist after you delete the information at the original source.

*See Id*., ¶¶ 6, 22, Exhibit B. As illustrated above, the ability to withdraw from ongoing disclosures is clear and conspicuous as it is hyperlinked in blue, and therefore easily recognizable from the surrounding text. As this Court has held, clear and conspicuous notice "denoting the existence of a hyperlink include the use of a contrasting font color (typically blue)… which can alert a user that

the particular text differs from other plain text in that it provides a clickable pathway to another webpage." *Kravets v. Anthropologie, Inc.,* No. 22-CV-60443, 2022 WL 1978712, at *5 (S.D. Fla. June 6, 2022). Accordingly, Plaintiff provided Consent under 18 U.S.C. § 2710(b)(2)(B) to the alleged conduct and the Complaint must be dismissed.

## VI. THIS COURT SHOULD ALTERNATIVELY STRIKE PLAINTIFF'S CLASS ALLEGATIONS BECAUSE THIS COURT HAS RECENTLY HELD THAT A CLASS CANNOT BE CERTIFIED IN THE CONTEXT OF VPPA LITIGATION.

Pursuant to Fed. R. Civ. P. 12(f) a court "may strike from any pleading ... any redundant, immaterial, impertinent, or scandalous mater." Pursuant to Fed. R. Civ. P. 23(d)(1)(D), a court may require "that the pleadings be amended to eliminate allegations about representation of absent persons." Pursuant to Fed. R. Civ. P. 23(c)(1), "as soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained."

As this Court has held, Fed. R. Civ. P. 23 plays a critical role in maintaining the integrity of the judicial system because a class action "increases the potential liability for the defendant and induces more pressure to settle the case, regardless of the merits." *Simmons v. Ford Motor Co.,* 592 F. Supp. 3d 1262, 1284 (S.D. Fla. 2022); *see also Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.,* 481 F. Supp. 3d 1258, 1274 (S.D. Fla. 2020), *aff'd,* No. 20-13588, 2021 WL 4427772 (11th Cir. Sept. 27, 2021) (same); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276 (11th Cir. 2019) (same). Accordingly, "District courts have the authority to strike class allegations at the pleading stage where the class as defined in the complaint cannot be certified." *Larry Pearl v. Coinbase Global, Inc*., No. 22-CV-03561-MMC, 2024 WL 3416505, at *2 (N.D. Cal. July 15, 2024) (*citing Kamm v. California City Dev. Co.,* 509 F.2d 205, 207 n.3, 212–14 (9th Cir. 1975)).

As your Honor has held, "to be entitled to class certification, the party seeking certification

must have standing and meet each of the requirements specified in Federal Rule of Civil Procedure

23(a), as well as the requirements of at least one subsection of Federal Rule of Civil Procedure

23(b)." *Collins v. Erin Cap. Mgmt., LLC,* 290 F.R.D. 689, 693 (S.D. Fla. 2013). Applying this

legal standard identified by Your Honor, this Court has recently held that a class cannot be certified

in the context of VPPA litigation. *See Martinez v. D2C, LLC,* No. 23-21394-CIV, 2024 WL

4367406, at *1 (S.D. Fla. Oct. 1, 2024). Similar to here, in *Martinez,* plaintiffs' VPPA claim

"boil[ed] down to their contention that Univision—as a video tape servicer provider—violated

their rights by disclosing their Facebook identification numbers ('Facebook IDs') along with the

prerecorded videos they accessed—personally identifiable information—to Meta." *Id.,* at *2.

Plaintiffs in *Martinez* sought to certify a class defined as:

> All persons in the United States who purchased a subscription to Univision NOW,
> requested or obtained prerecorded video materials or services on Univision NOW's
> website, used Facebook during the time the Pixel was active on Univision NOW's
> website from April 13, 2021[,] through May 8, 2023, and whose Personal Viewing
> Information Univision NOW disclosed to Meta.

*Id.* In denying plaintiffs' motion for class certification, this Court held that "the Plaintiffs' attempt

to establish numerosity… is problematic for several reasons." *Id,* at *7. Specifically, this Court

rejected plaintiffs' "central theory that the mere presence of the Meta Pixel on Univision's website

resulted in the transmission of tens of thousands of Univision subscribers' personally identifiable

information from Univision to Meta." *Id,* at *6. Additionally, this Court held that:

> In addition to viewing or selecting the prerecorded video through Univision's
> website, the subscriber must have also:
>
> > (1) had a Facebook account at the time the video was selected;
> > (2) used a web browser that didn't block the Pixel by default;
> > (3) been simultaneously logged into the subscriber's own Facebook
> > account while selecting the video;
> > (4) been simultaneously logged into Facebook on the same device
> > that the subscriber used to select the video;

> (5) been simultaneously logged into Facebook using the same
> browser through which the subscriber selected the video; and
> (6) not deployed any number of browser settings or add-on software
> that would have blocked the Pixel.

*Id.,* at \*7–8. Applying the above factors, this Court held that plaintiffs are unable to meet the

numerosity requirement of Rule 23 even though "35,845 subscribers…viewed at least one

prerecorded video on Univision's website" during the period the Meta Pixel was implemented." *Id.*

at \*2. This Court is not the first jurisdiction to deny class certification in the context of VPPA

litigation. For instance, in *In re Hulu Priv. Litig.*, the Northern District of California denied

certification for lack of ascertainability because:

> the court cannot tell how potential class members reliably could establish by
> affidavit the answers to the potential questions: do you log into Facebook and Hulu
> from the same browser; do you log out of Facebook; do you set browser settings to
> clear cookies; and do you use software to block cookies?...The possibility of
> substantial pecuniary gain affects this analysis too…That incentive and the vagaries
> of subjective recollection makes this case different than the small-ticket consumer
> protection class actions that this district certifies routinely…Plaintiffs have not
> defined an ascertainable class.

*Id*, No. C 11-03764 LB, 2014 WL 2758598, at \*16 (N.D. Cal. June 17, 2014). The Northern

District of California further held that Fed. R. Civ. P. 23(b)(2) and (b)(3) requirements were not

satisfied because:

> In the end, the substantial issues about remaining logged into Facebook and clearing
> and blocking cookies mean that the court cannot conclude on this record that the
> common issues predominate over the individual ones…Given that even the court's
> best guess at subclassing would not address the issues about ascertainability and
> identify the class members, the court finds on this record that common issues do
> not predominate…[B]ased on the court's holding that a class is not ascertainable on
> this record, class treatment is not superior.

*Id.*, 2014 WL 2758598, at \*22-23. In contrast to *Martinez* and *In re Hulu Priv. Litig*, there does

not appear to be an order in any jurisdiction which has certified a class in the context of VPPA

litigation.

Here, "Plaintiff seeks to represent a class defined as all persons in the United States who, during the two years preceding the filing of this action, requested or obtained a subscription to Defendant's website or video content from Defendant's website while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc." *See* Complaint, ¶ 58. However, Plaintiff is unable to maintain a class because as explained above, similar to the plaintiff in *Martinez* and *In re Hulu Priv. Litig*, Plaintiff's central theory is that the alleged mere presence of the Meta Pixel on the Website resulted in the transmission of "tens of thousands" of Motorsport subscribers' personally identifiable information from Motorsport to Meta. *See* Complaint, *generally*. Accordingly, as Plaintiff will be unable to satisfy the Fed. R. Civ. P. 23 requirements even with the benefit of discovery, Plaintiff's class allegations should be stricken to promote judicial economy.

## VIII.   CONCLUSION

WHEREFORE, Motorsport respectfully moves pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing this matter. Alternatively, Motorsport respectfully moves pursuant to Fed. R. Civ. Pro. Fed. R. Civ. P. 12(f), 23(c)(1), and/or 23(d)(1)(D) for an order striking the class allegations. Motorsport respectfully seeks such further relief as appears lawful, equitable, and just.

Dated: January 6, 2025                         Respectfully submitted,

                                                        */s/ Kyle W. Woodford*_____
                                                        Ryan D. Schoeb, FBN: 109257
                                                        Kyle W. Woodford, FBN: 1033490

**WOOD, SMITH, HENNING & BERMAN LLP**
1501 South Church Avenue, Suite 200
Tampa, Florida 33629
Telephone: 813-422-6910
Fax: 813-425-6983
rschoeb@wshblaw.com
tmarshall@wshblaw.com
kwoodford@wshblaw.com
tsharp@wshblaw.com

*Counsel for Motorsport.TV Digital, LLC*


## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2025, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record, including, the following:

Arun Ravindran, Esq.
Jule E. Holt, Esq.
Hedin LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
aravindran@hedinllp.com
jholt@hedinllp.com

*Attorneys for Plaintiff*


/s/ Kyle W. Woodford_____
Kyle W. Woodford