**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:24-CV-24066-CMA

ALAN GUERECA, *individually and*
*on behalf of all others similarly situated*,

     Plaintiff,

v.

MOTORSPORT.TV DIGITAL, LLC,

     Defendant.

_____

**DEFENDANT MOTORSPORT.TV DIGITAL, LLC'S ANSWER AND AFFIRMATIVE**
**DEFENSES TO PLAINTIFF'S CLASS ACTION COMPLAINT**

**RYAN D. SCHOEB, ESQ.**
Florida Bar No. 109257
**KYLE W. WOODFORD, ESQ.**
Florida Bar No. 1033490
**SEAN V. PATEL, ESQ.** (*pro hac vice*)
**CHRISTOPHER J. SEUSING, ESQ.** (*pro hac vice*)
**WOOD, SMITH, HENNING & BERMAN LLP**
1501 S. Church Avenue, Suite 200
Tampa, Florida 33629
rschoeb@wshblaw.com
kwoodford@wshblaw.com
tmarshall@wshblaw.com
spatel@wshblaw.com
cseausing@wshblaw.com

*Counsel for Motorsport.TV Digital, LLC*

Defendant Motorsport.TV Digital, LLC ("Motorsport"), by and through its undersigned counsel, respectfully files this Answer to the Class Action Complaint (ECF No 1, the "Complaint") of Plaintiff Alan Guereca as follow:

Motorsport denies all allegations in the Complaint except to the extent expressly admitted herein. Because the headings, footnotes, and exhibits in and attached to the Complaint are not allegations, Motorsport does not respond to them. To the extent a response to the headings, footnotes, and exhibits is necessary, Motorsport denies the allegations contained in any headings, footnotes, and exhibits.

Motorsport responses herein are made upon information and belief and may change subject to further investigation. Numbered paragraphs below correspond to the like-numbered paragraphs in the Complaint.

## <u>NATURE OF THE CASE</u>

1.      Plaintiff brings this action for legal and equitable remedies to redress and put a stop to Defendant Motorsport.tv Digital, LLC's practices of knowingly disclosing Plaintiff's and its other customers' identities, their subscriptions, and the titles of the prerecorded video materials that they purchased to Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc. ("Facebook"), in violation of the federal Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710.

**<u>ANSWER:</u>** Paragraph 1 of the Complaint is a statement of Plaintiff's position, and contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

2.      Over the past two years, Defendant has systematically transmitted (and continues to transmit today) its customers' personally identifying subscription and video viewing

information to Meta using a snippet of programming code called the "Meta Pixel," which Defendant chose to install on its website

**ANSWER:** Paragraph 2 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

3.     The information Defendant disclosed, and continues to disclose, to Meta, via the Meta Pixel it installed on its website, includes a consumer's Facebook ID ("FID") along with his or her subscription and the title of each of the specific videos that the consumer requested or obtained on Defendant's website. A consumer's FID is a unique sequence of numbers linked to the Meta profile belonging to that consumer. The consumer's Meta profile, in turn, publicly identifies the person by name, and contains other personally identifying information about the consumer as well. Entering "facebook.com/[FID]" into a web browser returns the Meta profile of the person to whom the FID corresponds. Thus, the FID identifies a person more precisely than a name, as numerous persons may share the same name but each person's Facebook profile (and associated FID) uniquely identifies one and only one person. In the simplest terms, the Meta Pixel installed by Defendant captures and discloses to Meta information that reveals the specific videos that a particular person viewed as a subscriber of Defendant's website (hereinafter, "Private Viewing Information").

**ANSWER:** Paragraph 3 of the Complaint is a statement of Plaintiff's position, and contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

4.     Defendant disclosed and continues to disclose that a consumer purchased a subscription to Defendant's website and its customers' Private Viewing Information to Meta without asking for, let alone obtaining, its customers' consent to these practices

**ANSWER:** Paragraph 4 of the is a statement of Plaintiff's position, and contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

5.      The VPPA clearly prohibits what Defendant has done. Subsection (b)(1) of the VPPA provides that, absent the consumer's prior informed, written consent, any "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for," 18 U.S.C. § 2710(b)(1), inter alia, liquidated damages in the amount of $2,500.00 per violation and equitable relief, *see id*. § 2710(c).

**ANSWER:** Paragraph 5 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

6.      Accordingly, on behalf of himself and the putative Class members defined below, Plaintiff brings this Class Action Complaint against Defendant for intentionally and unlawfully disclosing his subscription and Personal Viewing Information to Meta

**ANSWER:** Paragraph 6 of the Complaint is a statement of Plaintiff's position, and contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

## PARTIES

### I.      Plaintiff Guereca

7.      Plaintiff Guereca is a citizen and resident of Jackson County, Georgia.

**ANSWER:** In response to Paragraph 7 of the Complaint, Motorsport lacks information sufficient to answer the allegations related to Plaintiff's citizenship and residency. Motorsport denies the remaining allegations.

3

8.      Plaintiff Guereca is, and at all relevant times was, a user of Meta.

**ANSWER:** In response to Paragraph 7 of the Complaint, Motorsport lacks information sufficient to answer the allegations related to whether Plaintiff is a user of Meta. Motorsport denies the remaining allegations.

9.      Plaintiff Guereca is a consumer of the video products and services offered on Defendant's motosport.tv website. He viewed on-demand videos on Defendant's website after purchasing a subscription in June 2023 In purchasing a subscription to view on-demand videos, Plaintiff Guereca provided his name, email address, payment information, and zip code.

**ANSWER:** In response to Paragraph 9 of the Complaint, Motorsport admits only that the motorsport.tv (the "Website") speaks for itself and that Plaintiff purchased a subscription to view on demand videos on the Website. The remaining allegations contain legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

10.     On multiple occasions during the two years preceding the filing of this action, Plaintiff Guereca obtained pre-recorded videos from Defendant. On each such occasion, Defendant disclosed to Meta Plaintiff Guereca's FID, the specific title of the video he requested and obtained, and the URL where he requested access to and obtained the video. Defendant also disclosed to Meta information concerning the device Plaintiff Guereca used to request and obtain the video.

**ANSWER:** In response to Paragraph 10 of the Complaint, Motorsport admits only that Plaintiff purchased a subscription to view on demand videos on the Website. The remaining allegations contain legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

11.     At all relevant times, Plaintiff Guereca had a Meta account, a Meta profile, and an FID associated with such profile.

**ANSWER:** In response to Paragraph 11 of the Complaint, Motorsport lacks information sufficient to answer the allegations related to whether Plaintiff had a Meta account, a Meta Profile, an FID associated with such profile. Motorsport denies the remaining allegations.

12.     Plaintiff Guereca has never consented, agreed, authorized, or otherwise permitted Defendant to disclose subscription or Personal Viewing Information to Meta. In fact, Defendant has never even provided Plaintiff Guereca with written notice of its practices of disclosing its customers' subscription and Personal Viewing Information to third parties such as Meta.

**ANSWER:** Paragraph 12 of the Complaint is a statement of Plaintiff's position, and contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

13.     Because Defendant disclosed Plaintiff Guereca's subscription and Private Viewing Information—including his FID, his purchase videos, the title of the prerecorded video materials he accessed and obtained from Defendant's website, and the URL where such video is available— to Meta during the applicable statutory period, Defendant violated Plaintiff Guereca's rights under the VPPA and invaded his statutorily conferred interest in keeping such information, which bears on his personal affairs and concerns, private.

**ANSWER:** Paragraph 13 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

## II.     Defendant Motorsport.tv Digital, LLC.

14.     Defendant is a Florida limited liability company that maintains its principal place of business at 5972 NE 4th Avenue, Miami, FL 33137.

**ANSWER:** In response to Paragraph 14 of the Complaint, Motorsport admits the allegations.

15.     Defendant operates an online digital library of pre-recorded video materials, where it is engaged in the business of selling, *inter alia*, a wide variety of prerecorded video materials to consumers across the United States.

**ANSWER:** In response to Paragraph 15 of the Complaint, Motorsport admits the allegations.

## JURISDICTION AND VENUE

16.     The Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 2710.

**ANSWER:** Paragraph 16 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

17.     Personal jurisdiction and venue are proper because Defendant maintains its principle place of business in Miami, FL, within this judicial District.

**ANSWER:** Paragraph 17 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

## VIDEO PRIVACY PROTECTION ACT

18.     The VPPA prohibits companies like Defendant from knowingly disclosing to third parties like Facebook information that personally identifies consumers like Plaintiff as having viewed particular videos or other audio-visual products or services.

**ANSWER:** Paragraph 18 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

19.     Specifically, the VPPA prohibits "a video tape service provider" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider[.]" 18 U.S.C. § 2710(b)(1). The statute defines a "video tape service provider" as "any

person, engaged in the business…of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), and defines a "consumer" as "a renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). "'[P]ersonally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 19 to admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

20.     The VPPA's purpose is as apropos today as it was at the time of its enactment over 35 years ago. Leading up to the statute's enactment in 1988, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." Id. Senators at the time were particularly troubled by disclosures of records that reveal consumers' purchases and rentals of videos and other audiovisual materials, because such records offer "a window into our loves, likes, and dislikes," such that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S. Rep. No. 100-599 at 7-8 (1988) (statements of Sens. Simon and Leahy, respectively).

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 20 to admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

21.     Thus, in proposing the Video and Library Privacy Protection Act (which later became the VPPA), Senator Patrick J. Leahy (the senior Senator from Vermont from 1975 to 2023) sought to codify, as a matter of law, that "our right to privacy protects the choice of movies that

we watch with our family in our own homes." 134 Cong. Rec. S5399 (May 10, 1988). As Senator Leahy explained at the time, it is the personal nature of such information, and the need to protect it from disclosure, that is the raison d'être of the statute: "These activities are at the core of any definition of personhood. They reveal our likes and dislikes, our interests and our whims. They say a great deal about our dreams and ambitions, our fears and our hopes. They reflect our individuality, and they describe us as people." *Id.*

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 21 to admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

22.     While these statements rang true in 1988 when the act was passed, the importance of legislation like the VPPA in the modern era of data mining is more pronounced than ever before. During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Leahy emphasized the point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information."

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 22 to admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

23.     Former Senator Al Franken may have said it best: "If someone wants to share what they watch, I want them to be able to do so . . . But I want to make sure that consumers have the right to easily control who finds out what they watch—and who doesn't. The Video Privacy Protection Act guarantees them that right."

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 23 to

admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

24.      In this case, however, Defendant deprived Plaintiff and the unnamed Class members of that right by systematically (and surreptitiously) disclosing their Personal Viewing Information to Facebook, without providing notice to (let alone obtaining consent from) any of them, as explained in detail below.

**ANSWER:** Paragraph 25 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

### BACKGROUND FACTS

**I.    Consumers' Personal Information Has Real Market Value**

25.      In 2001, Federal Trade Commission ("FTC") Commissioner Orson Swindle remarked that "the digital revolution . . . has given an enormous capacity to the acts of collecting and transmitting and flowing of information, unlike anything we've ever seen in our lifetimes . . . [and] individuals are concerned about being defined by the existing data on themselves."

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 25 to admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

26.      More than a decade later, Commissioner Swindle's comments ring truer than ever, as consumer data feeds an information marketplace that supports a $26 billion dollar per year online advertising industry in the United States

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 26 to admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

27.      The FTC has also recognized that consumer data possesses inherent monetary value within the new information marketplace and publicly stated that:

    Most consumers cannot begin to comprehend the types and amount of information
    collected by businesses, or why their information may be commercially valuable.

Data is currency. The larger the data set, the greater potential for analysis—and
profit.

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 27 to
admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

28.     In fact, an entire industry exists while companies known as data aggregators
purchase, trade, and collect massive databases of information about consumers. Data aggregators
then profit by selling this "extraordinarily intrusive" information in an open and largely
unregulated market.

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 28 to
admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

29.     The scope of data aggregators' knowledge about consumers is immense: "If you
are an American adult, the odds are that [they] know[] things like your age, race, sex, weight,
height, marital status, education level, politics, buying habits, household health worries, vacation
dreams—and on and on."

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 29 to
admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

30.     Further, "[a]s use of the Internet has grown, the data broker industry has already
evolved to take advantage of the increasingly specific pieces of information about consumers that
are now available."

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 30 to
admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

31.     Recognizing the serious threat the data mining industry poses to consumers'
privacy, on July 25, 2012, the co-Chairmen of the Congressional Bi-Partisan Privacy Caucus sent
a letter to nine major data brokerage companies seeking information on how those companies

collect, store, and sell their massive collections of consumer data, stating in pertinent part:

> By combining data from numerous offline and online sources, data brokers have developed hidden dossiers on every U.S. consumer. This large[-]scale aggregation of the personal information of hundreds of millions of American citizens raises a number of serious privacy concerns.

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 31 to admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

32.     Data aggregation is especially troublesome when consumer information is sold to direct-mail advertisers. In addition to causing waste and inconvenience, direct-mail advertisers often use consumer information to lure unsuspecting consumers into various scams, including fraudulent sweepstakes, charities, and buying clubs. Thus, when companies like Motorsport.tv share information with data aggregators, data cooperatives, and direct-mail advertisers, they contribute to the "[v]ast databases" of consumer data that are often "sold to thieves by large publicly traded companies," which "put[s] almost anyone within the reach of fraudulent telemarketers" and other criminals.

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 32 to admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

33.     Disclosures like Defendant's are particularly dangerous to the elderly. "Older Americans are perfect telemarketing customers, analysts say, because they are often at home, rely on delivery services, and are lonely for the companionship that telephone callers provide." The FTC notes that "[t]he elderly often are the deliberate targets of fraudulent telemarketers who take advantage of the fact that many older people have cash reserves or other assets to spend on seemingly attractive offers."

**ANSWER:** Paragraph 33 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

34.     Indeed, an entire black market exists where the personal information of vulnerable elderly Americans is exchanged. Thus, information disclosures like Defendant's are particularly troublesome because of their cascading nature: "Once marked as receptive to [a specific] type of spam, a consumer is often bombarded with similar fraudulent offers from a host of scam artists."

**ANSWER:** Paragraph 34 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

35.     Defendant is not alone in violating its customers' statutory rights and jeopardizing their well-being in exchange for increased revenue: disclosing customer and subscriber information to data aggregators, data appenders, data cooperatives, direct marketers, and other third parties has become a widespread practice. Unfortunately for consumers, however, this growth has come at the expense of their most basic privacy rights.

**ANSWER:** Paragraph 35 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

## II.     Consumers Place Monetary Value on their Privacy and Consider Privacy Practices When Making Purchases

36.     As the data aggregation industry has grown, so too have consumer concerns regarding their personal information.

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 36 to admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

37.     A recent survey conducted by Harris Interactive on behalf of TRUSTe, Inc. showed that 89 percent of consumers polled avoid doing business with companies whom they believe do not protect their privacy online. As a result, 81 percent of smartphone users polled said that they avoid using smartphone apps that they don't believe protect their privacy online.

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 37 to

admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

38.    Thus, as consumer privacy concerns grow, consumers are increasingly incorporating privacy concerns and values into their purchasing decisions and companies viewed as having weaker privacy protections are forced to offer greater value elsewhere (through better quality and/or lower prices) than their privacy-protective competitors.

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 38 to admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

39.    In fact, consumers' personal information has become such a valuable commodity that companies are beginning to offer individuals the opportunity to sell their personal information themselves.

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 39 to admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

40.    These companies' business models capitalize on a fundamental tenet underlying the personal information marketplace: consumers recognize the economic value of their private data. Research shows that consumers are willing to pay a premium to purchase services from companies that adhere to more stringent policies of protecting their personal data

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 40 to admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

41.    Thus, in today's digital economy, individuals and businesses alike place a real, quantifiable value on consumer data and corresponding privacy rights. As such, where a business offers customers a service that includes statutorily guaranteed privacy protections, yet fails to honor these guarantees, the customer receives a service of less value than the service paid for.

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 41 to admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

III. **Defendant Uses the Meta Pixel to Systematically Disclose its Customers' Subscription Purchases and Personal Viewing Information to Meta**

42.     As alleged below, when a consumer purchases a subscription to Defendant's website, that purchase of the subscription is communicated to Meta by way of the Meta Pixel. Also, when a consumer requests or obtains a specific video, the Meta Pixel technology transmits the consumer's personally identifying information and detailed information concerning the specific interactions the subscriber takes on its website (including the consumer's Private Viewing Information revealing the specific videos that he or she requested) to Meta, without the subscriber's consent, in clear violation of the VPPA.

**ANSWER:** Paragraph 42 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

A. **The Meta Pixel**

43.     On February 4, 2004, Mark Zuckerberg and others launched Facebook, now known as "Meta". Since then, Meta has become the world's largest social media platform. To create a Meta account, a person must provide, inter alia, his or her first and last name, birthdate, gender, and phone number or email.

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 43 to admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

44.     The Meta Pixel, first introduced in 2013 as the "Facebook Pixel," is a unique string of code that companies can embed on their websites to allow them to track consumers' actions and report the actions back to Meta.

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 44 to admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

45.     The Meta Pixel allows online-based companies like Defendant to build detailed profiles about their visitors by collecting information about how they interact with their websites, and to then use the collected information to service highly targeted advertising to them.

**ANSWER:** Motorsport denies the allegations contain in Paragraph 45.

46.     Additionally, a Meta Pixel installed on a company's website allows Meta "to match . . . website visitors to their respective [Meta] User accounts." Meta is able to do this because it has assigned to each of its users an "FID" number: a unique and persistent identifier that allows anyone to look up the user's unique Meta profile and thus identify the user by name. Then, each transmission of information made from a company's website to Meta via the Meta Pixel is accompanied by the FID of the website's visitor. Moreover, the Meta Pixel can follow a consumer to different websites and across the Internet even after clearing browser history.

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 46 to admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

47.     Meta has used the Meta Pixel to amass a vast digital database of dossiers comprised of highly detailed personally identifying information about each of its billions of users worldwide, including information about all of its users' interactions with any of the millions of websites across the Internet on which the Meta Pixel is installed. Meta then monetizes this Orwellian database by selling advertisers the ability to serve highly targeted advertisements to the persons whose personal information is contained within it.

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 47 to admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

48.     Simply put: if a company chooses to install the Meta Pixel on its website, both the company who installed it and Meta (the recipient of the information it transmits) are then able to "track[] the people and type of actions they take"22 on the company's website, including the purchases they made, the items they spent time viewing, and, as relevant here, the specific video content that they requested or obtained on the website.

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 48 to admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

**B.     Defendant Knowingly Uses the Meta Pixel to Transmit the Subscription Purchases and Private Viewing Information of its Customers to Meta**

49.     Defendant allows persons to become digital consumers of its various online-based video products and services by subscribing to its website or purchasing on-demand videos or bundles. To purchase any of those options, the consumer must provide at least his or her name, email address, billing address, and credit- or debit-card (or other form of payment) information.

**ANSWER:** In response to Paragraph 49 of the Complaint, Motorsport states that the Website speaks for itself. The remaining allegations are denied.

50.     After a person has purchased a subscription or gains access to videos on Defendant's website, Defendant uses—and has used at all times relevant hereto—the Meta Pixel to disclose to Meta the unencrypted FID of the subscriber and the specific videos that he or she requested or obtained from Defendant's website.

**ANSWER:** Paragraph 50 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

51.     Defendant intentionally programmed its website (by following step-by-step instructions from Meta's website) to include a Meta Pixel that systematically transmits to Meta the FIDs of its customers, any subscription purchase, and the specific titles of video products that the

customer requested in order to take advantage of the targeted advertising and other informational and analytical services offered by Meta.

**ANSWER:** Paragraph 51 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

52.     With only a person's FID and the video content name or URL that the person requested on Defendant's website—all of which Defendant knowingly provides to Meta—any ordinary person could learn the identity of the person to whom the FID corresponds and the specific video products or services that this person requested. This can be accomplished simply by accessing the URL www.facebook.com/[unencrypted FID].

**ANSWER:** Paragraph 52 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

53.     Defendant's practices of disclosing consumers' purchases of subscriptions and Private Viewing Information to Meta continued unabated for the full duration of the time period relevant to this action. At all relevant times, whenever Plaintiff or another consumer purchased a subscription or video on Defendant's website, Defendant disclosed to Meta the specific video that was requested (including the URL where such video was accessed), along with the FID of the consumer who requested it, which, as discussed above, uniquely identifies the person.

**ANSWER:** Paragraph 53 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

54.     At all relevant times, Defendant knew that the Meta Pixel disclosed its consumers' subscription purchases and Private Viewing Information to Meta.

**ANSWER:** Paragraph 54 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

55. Defendant could easily have programmed its website so that none of its consumers' subscription purchases or detailed Private Viewing Information is disclosed to Meta. Instead, Defendant chose to program its website so that all of its customers' detailed Private Viewing Information is sent to Meta *en masse*.

**ANSWER:** Paragraph 55 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

56. Prior to transmitting its customers' Private Viewing Information to Meta, Defendant failed to notify Plaintiff or any of its other customers that it would do so, and neither Plaintiff nor any of its other customers have consented (in writing or otherwise) to these practices.

**ANSWER:** Paragraph 56 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

57. By intentionally disclosing to Meta Plaintiff's and its other customers' FIDs together with the subscription information and specific video content they each requested obtained, without Plaintiff's or any of its other customers' consent to these practices, Defendant knowingly and systematically violated the VPPA on an enormous scale.

**ANSWER:** Paragraph 57 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

## CLASS ACTION ALLEGATIONS

58. Plaintiff seeks to represent a class defined as all persons in the United States who, during the two years preceding the filing of this action, requested or obtained a subscription to Defendant's website or video content from Defendant's website while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc.

**ANSWER:** Motorsport admits that Plaintiff purports to bring this case as a class action, but denies that this case is appropriate for class treatment as alleged. In addition, Paragraph 58 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

59.    Class members are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in at least the tens of thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the membership records of Defendant.

**ANSWER:** Motorsport admits that Plaintiff purports to bring this case as a class action, but denies that this case is appropriate for class treatment as alleged. In addition, Paragraph 59 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

60.    Common questions of law and fact exist for all Class members and predominate over questions affecting only individual class members. Common legal and factual questions include, but are not limited to: (a) whether Defendant knowingly disclosed Plaintiff's and Class members' subscription purchases and Private Viewing Information to Meta; (b) whether Defendant's conduct violates the Video Privacy Protection Act, 18 U.S.C. § 2710; (c) whether Defendant should be enjoined from disclosing Plaintiff's and Class members' Private Viewing Information to Meta; and (d) whether Plaintiff and Class members are entitled to statutory damages for the aforementioned violations.

**ANSWER:** Motorsport admits that Plaintiff purports to bring this case as a class action, but denies that this case is appropriate for class treatment as alleged. In addition, Paragraph 60 of

the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

61.     The named Plaintiff's claims are typical of the claims of the Class in that the named Plaintiff and the Class members suffered invasions of their statutorily protected right to privacy (as afforded by the VPPA), as well as intrusions upon their private affairs and concerns that would be highly offensive to a reasonable person, as a result of Defendant's uniform and wrongful conduct in intentionally disclosing their Private Purchase Information to Met

**ANSWER:** Motorsport admits that Plaintiff purports to bring this case as a class action, but denies that this case is appropriate for class treatment as alleged. In addition, Paragraph 61 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

62.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of Class members.

**ANSWER:** Motorsport admits that Plaintiff purports to bring this case as a class action, but denies that this case is appropriate for class treatment as alleged. In addition, Paragraph 62 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

63.     The class mechanism is superior to other available means for the fair and efficient adjudication of Class members' claims. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation

necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by this case's complex legal and factual issues. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**ANSWER:** Motorsport admits that Plaintiff purports to bring this case as a class action, but denies that this case is appropriate for class treatment as alleged. In addition, Paragraph 63 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

## CAUSE OF ACTION

### (Violation of the Video Privacy Protection Act, 18 U.S.C. § 2710)

64.      Plaintiff repeats the allegations asserted in the preceding paragraphs as if fully set forth herein.

**ANSWER:** In response to Paragraph 64 of the Complaint, Motorsport incorporates by references its responses to Paragraphs 1-63 as if fully stated herein.

65.      Plaintiff brings his claim individually and on behalf of the putative Class

**ANSWER:** Paragraph 65 of the Complaint is a statement of Plaintiff's position, to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

66.      The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally identifying information" concerning any "consumer" to a third party without the

"informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C. § 2710.

**ANSWER:** There are no factual allegations directed at Motorsport in Paragraph 66 to admit or deny. To the extent any allegations are directed at Motorsport, they are denied.

67.    As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials[.]" Defendant is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it is engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those sales affect interstate or foreign commerce.

**ANSWER:** Paragraph 67 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

68.    As defined in 18 U.S.C. § 2710(a)(1), a "'consumer' means any renter, purchaser, or consumer of goods or services from a video tape service provider." As alleged above, Plaintiff and Class members, as paid subscribers to Defendant's website, are consumers of Defendant's service of providing video content. Thus, Plaintiff and Class members are "consumers" as defined in 18 U.S.C. § 2710(a)(1)

**ANSWER:** Paragraph 68 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

69.    As defined in 18 U.S.C. § 2710(a)(3), "'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." Defendant knowingly disclosed Plaintiff's and Class members' subscription and Private Viewing Information to Meta in the

manner alleged herein. The subscription and Private Viewing Information that Defendant transmitted to Meta constitutes "personally identifiable information" as defined in 18 U.S.C. § 2710(a)(3) because the transmitted information identified Plaintiff and each Class member to Meta as an individual who purchased a subscription or requested or obtained video content, including the specific video materials requested or obtained from Defendant's website

**ANSWER:** Paragraph 69 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

70.     Defendant never obtained informed, written consent from Plaintiff or any Class member to disclose their Private Viewing Information to Meta or any other third party. More specifically, Defendant never obtained from Plaintiff or any Class member informed, written consent in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; Defendant never obtained from Plaintiff or any Class member informed, written consent that, at the election of the consumer, was given at the time the disclosure is sought or was given in advance for a set period of time, not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner; and Defendant never provided an opportunity, in a clear and conspicuous manner, for Plaintiff or any Class member to withdraw consent on a case-by-case basis or to withdraw consent from ongoing disclosures, at the consumer's election. *See* 18 U.S.C. § 2710(b)(2).

**ANSWER:** Paragraph 70 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

71.     Defendant knowingly disclosed such information to Meta because Defendant intentionally installed and programmed the Meta Pixel code on its website, knowing that such code would transmit to Meta the subscription purchases and video titles requested by its customers and

its customers' unique identifiers (including FIDs) when they subscribed to or requested or obtained videos from its website.

**ANSWER:** Paragraph 71 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

72.     By disclosing Plaintiff's and Class members' subscription purchases and Private Viewing Information, Defendant violated their statutorily protected right to privacy in the videos they requested or obtained from Defendant. 18 U.S.C. § 2710(c).

**ANSWER:** Paragraph 72 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

73.     As a result of these violations, Defendant is liable to Plaintiff and Class members for damages and other relief as provided by the VPPA.

**ANSWER:** Paragraph 73 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

74.     On behalf of himself and all members of the Class, Plaintiff seeks to enjoin Defendant's future disclosures of subscription purchases and its customers' Private Viewing Information; liquidated damages in the amount of $2,500 per violation of the VPPA; reasonable attorneys' fees and costs; and all other preliminary or equitable relief the Court deems appropriate. 18 U.S.C. § 2710(c)(2)(A)

**ANSWER:** Paragraph 74 of the Complaint is a statement of Plaintiff's position, and contains legal conclusions to which no answer is required. To the extent an answer is required, Motorsport denies the allegations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seek

a judgment against Defendant **Motorsports.tv Digital, LLC** as follows:

A.      For an order certifying the Class under Rule 23 of the Federal Rules of Civil
Procedure and naming Plaintiff as representatives of the Class and
Plaintiff's attorneys as Class Counsel to represent the Class;

B.      For an order declaring that Defendant's conduct as described herein violated
the VPPA;

C.      For an order finding in favor of Plaintiff and the Class and against
Defendant on all counts asserted herein;

D.      For an award of $2,500.00 to the Plaintiff and each Class member, as
provided by the VPPA, 18 U.S.C. § 2710(c);

E.      For an order permanently enjoining Defendant from disclosing the Private
Viewing Information of its customers to third parties in violation of the
VPPA.

F.      For prejudgment interest on all amounts awarded; and

G.      For an order awarding punitive damages, reasonable attorneys' fees, and
costs to counsel for Plaintiff and the Class under Rule 23 and 18 U.S.C. §
2710(c).

**ANSWER:** Motorsport denies that Plaintiff is entitled to any of the relief requested and

denies every allegation not expressly admitted.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all causes of action and issues so triable.

**ANSWER:** Motorsport demands a jury trial and denies every allegation not expressly

admitted.

## AFFIRMATIVE DEFENSES

Motorsport asserts the following affirmative defenses, without assuming the burden of proof on such defenses that would otherwise fall on Plaintiff. Motorsport reserves the right to supplement or amend these defenses as discovery is conducted, and does not knowingly or intentionally waive any applicable affirmative defense.

### First Affirmative Defense

The Court lacks subject matter jurisdiction because Plaintiff and the putative class members lack standing under Article III of the United States Constitution.

### Second Affirmative Defense

Plaintiff and the putative class members fail to state a claim upon which relief can be granted.

### Third Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole or in part, because they did not view prerecorded videos on the Website.

### Fourth Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole or in part, by the applicable statute of limitations, including but not limited to the general provision contained in Motorsport's Terms of Service.

### Fifth Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole or in part, by the limitation of liability provision contained in Motorsport's Terms of Service.

## Sixth Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole in part, because Motorsport did not knowingly disclose Plaintiff's and the putative class members' alleged personally identifiable information.

## Seventh Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole or in part, because any disclosures allegedly made by Motorsport was made incident to the ordinary course of Motorsport's business.

## Eighth Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole or in part, because their reading of the VPPA would be barred by the First Amendment of the United States Constitution.

## Ninth Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole or in part, by the doctrine of intervening and/or superseding causation because any alleged injuries or damages they claim were caused by third parties who are not employees or agents of Motorsport.

## Tenth Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole or in part, because the acts, omissions, conduct, damages, loss, and/or injuries complained of were proximately caused by persons or entities other than Motorsport.

## Eleventh Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole or in part, because any alleges damages, injuries, or loss were caused and brought about by a prior or subsequent

intervening and superseding cause for which Motorsport had no responsibility or control over, by an unavoidable accident, by an act of God, or otherwise were substantially brought about by a cause or party not under the control of Motorsport and therefore, Motorsport is without fault.

### Twelfth Affirmative Defense

Plaintiffs' and the putative class members' claims are barred, in whole in part, because they have not suffered any injuries or incurred any damages.

### Thirteenth Affirmative Defense

If Plaintiff or the putative class members have been injured or damaged, they are barred from recovery, in whole or in part, by their failure to mitigate injuries and their failure to mitigate damages.

### Fourteenth Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole or in part, because any injuries or damages resulted from their acts and/or omissions.

### Fifteenth Affirmative Defense

If  Plaintiff or the putative class members have been injured or damaged, any damage, loss, or liability sustained by Plaintiff or the putative class members must be reduced, diminished, and/or barred in proportion to the wrongful or negligent conduct of persons or entities other than Motorsport under the principles of equitable allocation, recoupment, set-off, proportionate, responsibility, and comparative fault.

### Sixteenth Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole or in part, by the warranty disclaimer provision contained in Motorsport's Terms of Service.

### Seventeenth Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole or in part, by the doctrine of waiver, estoppel, release, consent, and/or unclean hands.

### Eighteenth Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole or in part, by the collateral source doctrine.

### Nineteenth Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole or in part, by the voluntary payment doctrine.

### Twentieth Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole or in part, by the failure to  join one or more indispensable parties.

### Twenty First Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole or in part, by the doctrine of election of remedies.

### Twenty Second Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole or in part, because Motorsport did not breach any alleged contractual, statutory, regulatory, common law, or any other alleged duty owed to Plaintiff or the putative class members.

### Twenty Third Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole or in part, because Motorsport complied with all applicable laws, regulations, rules, and statutes.

### Twenty Fourth Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole or in part, because Motorsport did not act with intent to invade Plaintiff's or the putative class members' alleged privacy.

### Twenty Fifth Affirmative Defense

Plaintiff's and the putative class members' claims are barred, in whole or in part, because Motorsport did not retain any benefit related to the alleged personal information of Plaintiff or the putative class members.

### Twenty Six Affirmative Defense

Any claims of Plaintiff and the putative class members against Motorsport for punitive damages should be dismissed because an award of punitive damages would violate Motorsport's Due Process rights as guaranteed by the United States Constitution and the Due Process provisions of the Constitutions of the State of Florida, and any other applicable state.

### Twenty Seventh Affirmative Defense

The Complaint fails to state sufficient facts to constitute a claim for recovery of attorneys' fees.

### Twenty Eighth Affirmative Defense

This lawsuit is improper for resolution on a class-wide basis because the putative class does not meet the requirements of Federal Rule of Civil Procedure 23.

### Twenty Ninth Affirmative Defense

Motorsport pleads any and all affirmative defenses contained in the Federal Rules of Civil Procedure which are supported by the facts, whether known or unknown at this time, as a complete or partial bar to the claims of Plaintiff and putative class members.

**<u>Thirtieth Affirmative Defense</u>**

All possible affirmative defenses may not have been alleged herein, insofar as sufficient facts were not available after reasonable inquiry upon the filing of Motorsport's Answer, and therefore Motorsport reserves the right to amend its Answer to allege additional Affirmative Defenses if subsequent investigation so warrants.

**<u>PRAYER FOR RELIEF</u>**

Motorsport  prays for relief as follows:

1.      For dismissal of Plaintiff's and the putative class members' Complaint with prejudice and judgment entered in favor of Motorsport;

2.      That Motorsport be awarded its costs of suit, including reasonable attorneys' fees;

3.      For one hundred percent of any liability, responsibility, and/or fault for the injuries, losses, damages, if any, of Plaintiff and the punitive class members be apportioned to them and/or one or more third parties not before the Court;

4.      For a trial by jury on all issues so triable; and

5.      For such further and other relief as the Court deems fair and just.

<u>Dated</u>: March 5, 2025                                    Respectfully submitted,

                                    */s/ Kyle W. Woodford*_____
                                    Ryan D. Schoeb, FBN: 109257
                                    Kyle W. Woodford, FBN: 1033490
                                    Sean V. Patel, (*pro hac vice*)
                                    Christopher J. Seusing, (*pro hac vice*)

**WOOD, SMITH, HENNING & BERMAN LLP**
1501 South Church Avenue, Suite 200
Tampa, Florida 33629
Telephone:  813-422-6910
Fax:  813-425-6983
rschoeb@wshblaw.com
tmarshall@wshblaw.com
kwoodford@wshblaw.com
tsharp@wshblaw.com
***Counsel for Motorsport.TV Digital, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2025, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice of filing and a service copy to all counsel of record.

*/s/ Kyle W. Woodford*
Kyle W. Woodford